**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Darryl W. ARCHER,**
**Defendant-Appellant.**

No. 87-2679.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 19, 1988.

Decided April 5, 1988.

---

T. Christopher Kelly, Madison, Wis., for defendant-appellant.

Jeffrey M. Anderson, Asst. U.S. Atty., Madison, Wis., for plaintiff-appellee.

Before BAUER, Chief Judge and FLAUM and KANNE, Circuit Judges.

BAUER, Chief Judge.

The defendant, Darryl W. Archer, is an inmate at the Federal Correctional Institution at Oxford, Wisconsin (FCI–Oxford). He appeals from his conviction for obtaining and possessing objects designed or intended to be used to facilitate escape from a prison in violation of 18 U.S.C. § 1791(a)(2). The original indictment, returned on May 13, 1987, charged Archer with one count of possessing a diagram, a board, and a homemade screwdriver on December 30, 1986, all designed to facilitate his escape from prison. A superseding indictment, issued on July 16, 1987, added a second count of possessing a homemade handcuff key on June 4, 1987, also designed to facilitate his escape.

Archer moved to sever count two from count one on the grounds that joinder was improper under Federal Rule of Criminal Procedure 8(a) or, in the alternative, prejudicial under Federal Rule of Criminal Procedure 14. The district court denied Archer's motion. Archer also moved *in limine* to exclude from the trial evidence concerning his prior involvement in planning escapes. The magistrate ruled that the government could introduce evidence of certain prior escapes if it first indicated its intent to do so in order for Archer to renew his motion before the trial judge. The district court, over Archer's renewed objection, permitted the government to introduce evidence of Archer's involvement in some prior escape plans. After a two day trial, the jury returned verdicts of guilty on both counts. Archer now appeals these convictions on the grounds that the district court erroneously denied his motion to sev-

er and allowed the government to introduce into evidence Archer's prior bad acts. We affirm.

## I.

Archer agrees with the district court on the legal principles governing joinder but he objects to their application in this case. Archer first argues that joinder was inappropriate under Rule 8(a) of the Federal Rules of Criminal Procedure.[1] Rule 8(a) permits the joinder of two or more offenses if: (1) the crimes are of the same or similar character; (2) the crimes are based on the same act or transaction; or (3) the crimes are based on two or more acts or transactions connected together or constituting a common scheme or plan. Fed.R.Crim.P. 8(a); *United States v. Quinn*, 365 F.2d 256, 263 (7th Cir.1966). On appeal, the question whether joinder is proper under Rule 8(a) is subject to de novo review by this court. *United States v. Shue*, 766 F.2d 1122, 1134 (7th Cir.1985). We have held that district courts should construe Rule 8 broadly to allow joinder to enhance the efficiency of the judicial system, *United States v. Cavale*, 688 F.2d 1098, 1106 (7th Cir.), *cert. denied*, 459 U.S. 1018, 103 S.Ct. 380, 74 L.Ed.2d 513 (1982) (quoting *United States v. Isaacs*, 493 F.2d 1124, 1158 (7th Cir.), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974)), and to avoid expensive and duplicative trials, if judicial economy outweighs any prejudice to the defendant. *United States v. Wilson*, 715 F.2d 1164, 1171 (7th Cir.1983).

■ The district court found that the crimes allegedly committed by Archer were of the same or similar character. We agree. Archer contends that joinder was improper because there was an insufficient "overlap" in evidence. Yet, both counts

charge Archer with possessing prohibited objects with the intent to facilitate an escape from prison. The elements to be proved in each case were the same. This similarity supports the district court's decision of joinder.

■ Archer next argues that Rule 14 of the Federal Rules of Criminal Procedure required severance because joinder unduly prejudiced him.[2] Because a district court's ruling on a Rule 14 severance motion will be reversed only upon an abuse of discretion, *United States v. Hattaway*, 740 F.2d 1419, 1424 (7th Cir.), *cert. denied*, 469 U.S. 1089, 105 S.Ct. 599, 83 L.Ed.2d 708 (1984); *United States v. Garner*, 837 F.2d 1404, 1413 (7th Cir.1987), Archer must show that without severance, he was denied a fair trial. *United States v. Alpern*, 564 F.2d 755, 758 (7th Cir.1977).

Archer claims that joinder in this case harmed his defense of count two. Archer, the argument goes, had a strong need to testify with regard to count one. Count one alleged that Archer possessed a diagram, a board (to be used as a ladder), and a homemade screwdriver with the intent to facilitate an escape. Archer had given an incriminating statement to a prison official admitting his intent to use these objects to escape. At trial, however, Archer explained that a prison official coerced his confession by threatening to transfer him to a penitentiary and that he actually never intended to escape. Without this testimony, Archer believed he had no chance of prevailing on count one. On count two, the argument continues, Archer faced the opposite predicament. Count two concerned Archer's possession of a homemade handcuff key made from a bent ballpoint pen filler. Prison officials discovered and removed this key from Archer's anal canal. Archer believed that his best (perhaps only)

---

1. Rule 8(a) states:
   Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

2. Rule 14 states in relevant part:
   If it appears that a defendant or the government is prejudiced by a joinder of offenses ... in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

hope for acquittal lay in remaining silent on this count and forcing the government to prove its case that the bent ballpoint filler was a homemade handcuff key designed to facilitate an escape.

We have held that "[s]everance is not mandatory every time a defendant wishes to testify to one charge but to remain silent on another. If that were the law, a court would be divested of all control over the matter of severance and the choice would be entrusted to the defendant." *United States v. Peters*, 791 F.2d 1270, 1287 (7th Cir.1986) (quoting *Holmes v. Gray*, 526 F.2d 622, 626 (7th Cir.1975), *cert. denied sub nom., Holmes v. Israel*, 434 U.S. 907, 98 S.Ct. 308, 54 L.Ed.2d 194 (1977)). Nevertheless, we recognize that sometimes circumstances can coerce a defendant into testifying on a count upon which he wishes to remain silent. "[A] defendant may be willing to take the stand and testify as to one count but might prefer to remain silent and put the government to its proof on another count." *United States v. Lewis*, 547 F.2d 1030, 1033 (8th Cir.1976), *cert. denied*, 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 566 (1977). In such cases, severance may be necessary. We agree with the District of Columbia Circuit, however, that this need for severance does not arise "until the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other." *Baker v. United States*, 401 F.2d 958, 977 (D.C.Cir.), *cert. denied*, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970); *see also, Holmes v. Gray*, 526 F.2d at 626. Although Archer alleges prejudice under *Baker*, we agree with the district court that the defendant has failed to make the requisite showing. Archer maintains that the government can convict him on count two only if he testifies and that, without his testimony on count two, he would be acquitted. The record simply does not bear this out.

The government presented overwhelming independent evidence to show that Archer knowingly possessed the handcuff key. The record shows that Dr. James Reed, a prison official, recovered the key from Archer's anal canal. Dr. Reed also testified that the key could not have been placed in Archer's rectum without Archer's knowledge. Archer did not rebut this testimony. Harold (Fred) Westphal, a Unit Manager at FCI–Oxford, testified that when he confronted Archer with the information that he had a handcuff key hidden in his anal canal, Archer replied: "Fred, that's what I like about you. I will go ahead and give it to you." Lieutenant Paul Boushie, another prison official, testified that he had received special training from the Bureau of Prisons as a locksmith. Boushie stated that ballpoint pens could easily be turned into working handcuff keys and that he had done so many times during his training. Boushie concluded that based on his training and experience, it was his opinion that the homemade key removed from Archer was designed to unlock standard handcuffs. Archer challenged Boushie's testimony by asking him to unlock a set of standard handcuffs in open court with the key removed from Archer. The key did not work. On redirect, Boushie explained that the key would work if modified. The final witness, inmate William Holt, testified that Archer asked Holt to get him a brass filler from an ink pen so that Archer could make a handcuff key. He also testified that he saw Archer unlock the handcuffs of another inmate, Patrick Coyle, with the key. Coyle denied this during his own testimony.[3]

Given this record, we cannot conclude that the district court abused its discretion. Without Archer's testimony, the government offered sufficient evidence to support the jury's verdict. The testimony of Reed,

---

**3.** Archer's own testimony regarding the key was extremely short. He never admitted that he knowingly possessed a handcuff key. He did, however, acknowledge that he had experimented with making handcuff keys and that he did possess the object removed by Dr. Reed. Archer also testified that he had no prior knowledge of how to manufacture handcuff keys, that he did not know if the key would work, that in any case, a handcuff key would in no way aid an escape, and that he never possessed the object for the purpose of escape.

Westphal, and Boushie[4] convincingly demonstrated Archer's knowing possession of a handcuff key designed to facilitate an escape. Thus, we conclude that in light of the strength of the government's case and the value of Archer's testimony, Archer failed to make a convincing showing of a strong need to refrain from testifying on count two and that the district court's refusal to sever was not an abuse of discretion.[5]

## II.

Finally, Archer argues that the district court erred by admitting into evidence Archer's involvement in prior escapes in violation of Rule 404(b) of the Federal Rules of Evidence.[6] We have previously allowed the admissibility of evidence of prior bad acts if:

(1) the evidence falls under one of the exceptions of 404(b) and relates to an issue the defendant disputes, (2) the probative value of the evidence outweighs the possibility of undue prejudice, (3) the evidence is clear and convincing, and (4) the prior acts are similar enough and recent enough to be relevant to the charged offense.

*United States v. Tomasian,* 784 F.2d 782, 784–85 (7th Cir.1986). We will not reverse a trial court's evidentiary ruling absent a showing of abuse of discretion. *United States v. Byrd,* 771 F.2d 215, 219–20 (7th Cir.1985).

Consistent with the magistrate's earlier order, the government advised Archer and the district court that it intended to introduce evidence of Archer's participation in three previous escape plots for the limited purpose of showing intent, plan, knowledge, and possibly preparation. The district court ruled that evidence of Archer's involvement in the three prior escape plans related to showing motive, intent, plan, knowledge, and possibly preparation, but that it would allow the government to introduce evidence of only two of three prior escape plans. The third was excluded because the district court found it cumulative and inappropriate since the defendant was found not guilty of participation. The first incident admitted into evidence involved an escape in 1985 from the Terre Haute prison through drainage tunnels. The second concerned a "guerilla style raid" on FCI–Oxford, which involved an escaped inmate returning to the facility, killing several guards, and freeing other prisoners, including Archer.

We find that the district court did not abuse its discretion by allowing the government to introduce evidence of these prior escape plans. Archer contends that because the method involved in each escape plan was different, this evidence is irrelevant. Each plan, however, reflects Archer's desire and intent to escape from prison. Regardless of the method used, this evidence clearly relates to Archer's state of mind in possessing certain peculiar objects. The evidence also relates to Archer's knowledge regarding escape procedures; it demonstrates that Archer has considered a variety of means of escape, the security measures at the prison, and has collected information on what may or may not succeed. This certainly is relevant to the government's case that the seemingly innocuous objects in Archer's possession were for facilitating an escape from prison. The evidence of Archer's participation in prior escape plans demonstrates that Archer had a profound awareness of security measures and various escape methods and that he knew of ways in which odd objects could be used for the purpose of escape.

---

**4.** Assuming, arguendo, that Holt's testimony was discredited and therefore of little value to the government's case.

**5.** It is also worth noting that the district court properly instructed the jury to consider each count separately and not let a verdict of guilt on one count affect its decision on the other count. *United States v. Hedman,* 630 F.2d 1184, 1200 (7th Cir.1980).

**6.** Rule 404(b) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■ Archer further argues that the district court failed to consider adequately the potential prejudicial effect of the evidence of the "guerilla style raid" at FCI–Oxford. Although we agree that the district court could have more clearly articulated its finding on the issue, we do not believe it abused its discretion. Both the magistrate and the district court held separate hearings on Archer's motion to exclude evidence under Rule 404(b), discussed the appropriate requirements of the Rule, listened to arguments of both parties, and explained their findings to the parties. Certainly, evidence of participation in prior escape plans is prejudicial to Archer, but this does not necessarily make it inadmissible; a court may admit this prejudicial evidence so long as its probative value outweighs the risk of *undue* prejudice. This is not the case here. The testimony regarding Archer's participation in the "guerilla raid" described Archer as involved in the planning of the raid but also showed that he provided information to the prison authorities which helped to thwart the plan. The evidence also demonstrated that Archer, in order to avoid being transferred to a higher security facility, provided the authorities with information regarding the Terre Haute escape plans. Given these considerations, we find the district court did not abuse its discretion.

While we find no abuse of discretion in this case, we urge trial courts to strive to make explicit their findings on Rule 404(b), so that on appeal we can more readily review the appropriateness of the trial court's findings. *See United States v. Mahone*, 537 F.2d 922 (7th Cir.), *cert. denied*, 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976) and *United States v. Alvarez*, 833 F.2d 724, 727 (7th Cir.1987) (recommending the same procedure in Rule 609 prior-conviction findings).

For the foregoing reasons, the district court is

AFFIRMED.